# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-206-C**

**THE BANDANA CO., INC.,**                                            **PLAINTIFF,**

**V.**                **MEMORANDUM OPINION AND ORDER**

**THE TJX COMPANIES, INC., et al.,**                              **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This action is before the court upon the plaintiff's motion for a temporary restraining order (DE 3).

In deciding a motion for a temporary restraining order, the court must consider whether the plaintiff has shown a strong likelihood of success on the merits; whether the plaintiff has shown irreparable injury; whether the issuance of a preliminary injunction would cause substantial harm to others; and where the public interest lies. *See, e.g.*, *United States v. Brown*, 988 F.2d 658, 660 (6th Cir. 1993).

**I. Likelihood of Success**

First, the court must determine whether the plaintiff is likely to succeed in its claim for copyright infringement on the merits. In order to prevail, the plaintiff must show that it owns a copyright in the subject work and that the defendant copied original elements of the work. *Stromback v. New Line Cinema,* 384 F.3d 283, 293 (6th Cir. 2004)*; Ellis v. Diffie*, 177 F.3d 503 (6th Cir. 1999). The defendant propounds the test utilized by the Second Circuit which includes a distinct element – showing that the copying was unlawful or illicit. Defendant's Response, pp. 6-7,

citing *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir. 1991). The two-step process adopted by the Sixth Circuit to analyze substantial similarity comprises the same logic as the test adopted by the Second Circuit and is binding upon this court. See B. 2. Substantial Similarity, *infra*. Accordingly, the court will follow the ample authority provided by the Sixth Circuit.

### A. Copyrights

For purposes of the plaintiff's motion for a preliminary injunction, the defendant does not dispute the fact that Bandana owns copyrights on the subject products.

### B. Copying

Copying can be proven circumstantially by showing two things: that the defendant had access to the copyrighted work and that the defendant's product is substantially similar to the plaintiff's work. *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003); *Ellis, supra*. Access is defined as the opportunity to view the works and can be shown by circumstantial evidence of wide dissemination of the plaintiff's work. *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274 (6th Cir. 1988); *Peel & Co. v. Rug Market*, 238 F.3d 391, 395 (5th Cir. 2001).

#### 1. Access

The plaintiff claims that its works have been widely disseminated and names multiple catalogs, magazines, and newspapers that have displayed the copyrighted works, including *NICHE*, *Horchow*, *Southern Living*, and *The Courier Journal*.

Further, the plaintiff's works are displayed and marketed at art fairs, trade shows, and galleries. For purposes of this motion, the defendant does not dispute access.

### 2. Substantial Similarity

Substantial similarity analysis involves a two-step process adopted by the Sixth Circuit in *Kohus v. Mariol*. First, the aspects of the plaintiff's work that may be protected by copyright must be identified. *Kohus*, 328 F.3d at 855. The second step involves determining whether the allegedly infringing work is substantially similar to the protected elements of the plaintiff's work from the viewpoint of the intended audience. *Id*. In cases such as this one, involving works of art aimed at a general audience, the court can discern protectible elements and substantial similarity without expert testimony. *See Stromback*, 384 F.3d at 295 (expert testimony unnecessary unless subject matter is complex and technical). Works are substantially similar when an ordinary person would conclude that the defendant's work appropriates "material of substance and value" from the plaintiff. *Id*. at 297. The dispositive inquiry is whether "based upon his net impression of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another." *Id*. (citations omitted). For purposes of this motion, the defendants admit to "factual copying," that is, TJX was "inspired" by Bandana's ideas. However, the defendant claims that there was no illicit copying. In other words, TJX claims that it did not copy any protectible elements of Bandana's works.

### a. Protectible Elements

The purpose of the first step of the substantial similarity analysis is to filter out unoriginal and non-creative components of the protected work. *Kohus, supra*. "Copyright protection extends only to expression of ideas and not to ideas themselves." *Stromback*, 384 F.3d at 296. The combination of elements and the unique expression of an idea makes the work original. *Kellman v. Coca Cola*, 280 F. Supp. 2d 670 (E.D. Mich. 2003)(hat in shape of wing nut original because expressed plaintiff's idea to compare hardware to fan of Red Wings).

Unprotectible elements are those elements that were not independently created by the inventor and possess no minimal degree of creativity. Using scrap metal to make sculpture is not original because using scrap metal to make animal sculptures has been previously known and practiced for years. *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1287 (10th Cir. 1986)(medium of wooden dolls not protectible). Design elements found in the public domain or in prior art are not original. *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.*, 280 F. Supp. 776 (S.D.N.Y. 1968). Functional elements of Bandana's works are not original. In cases involving a functional object, it is necessary to eliminate those elements dictated by functionality. *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.* 843 F.2d 600 (1st Cir. 1988). Such elements would include, for example, a loop for holding a flower pot. Many elements in Bandana's sculptures were disclosed in prior works by others, and many elements are not protectible because they depict

naturally occurring postures or positions. No copyright protection may be afforded to elements of expression that naturally flow from the idea of an animal sculpture. *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987). So, for example, using slender metal rods to depict animal limbs and metal cylinders to depict bodies is not protectible. However, an artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal, and such variation is protectible. *Satava v. Lowry*, 323 F.3d 805, 812-13 (9th Cir. 2003)(distinctive curls of particular tendrils; arrangement of certain hues; unique shape of jellyfish copyrightable to the extent that choices not governed by jellyfish physiology or glass-in-glass medium). Thus, Bandana may prevent others from copying the original features it contributed, but it may not prevent others from copying elements of expression that nature displays for all observers, or that the metal medium suggests to all sculptors. *Id.* at 812.

     TJX's metal animals look remarkably similar to Bandana's creations. At oral argument, the defendant argued that such similarity is entirely legitimate and that Bandana has copyrights only on the entire animal and not on specific features of each animal (i.e., no separate copyright on cat face or cat paw). TJX argues that it is allowed to be "inspired" by Bandana's works and may copy features of the Bandana creations so long as the TJX end products are not identical to Bandana's works. Further, argues the defendant, TJX products do not infringe on Bandana's copyrights because the defendant's creatures are in different poses and Bandana's

5

"style" is not protectible.  However, that is not the law in the Sixth Circuit, or even in the Second Circuit.  Style is, in fact,  an ingredient of expression. *Steinberg v. Columbia Pictures Industries, Inc*., 663 F. Supp. 706 (S.D.N.Y. 1987).  Furthermore, it is possible to infringe on a copyright by appropriating only a part of the work.  *Mattel, Inc. v. Azrak-Hamway Int'l, Inc*., 724 F.3d 357, 360 (2d Cir. 1983).  "[A] copyright infringement may occur by reason of a substantial similarity that involves only a small portion of each work."  *Burroughs v. Metro-Goldwyn-Mayer, Inc*., 683 F.2d 610, 624 n. 14 (2d Cir. 1982).  While there are some inevitable commonalities between two whimsical metal cat potholders, "copying of *constituent elements* of the work that are original" is copyright infringement.  *Feist Publications, Inc. v. Rural Telephone Service Co., Inc*., 499 U.S. 340, 361 (1991)(emphasis added).  Bandana's sculptures are vastly removed from the dogs and cats in the public domain, and Bandana's sculptures do not follow inexorably from nature's animals.  For instance, the unique facial expressions on Bandana's works, the coat  texture depicted by edger guides, and the use of tread plates to depict fur on the "animal" ears are not compelled by nature.

      The court finds the following components of Bandana's works are original and protected features relevant to the instant motion:  the ball nose with three whiskers protruding directly therefrom[1] all mounted on two punched-out convex

---

[1] There is prior art depicting three metal rod cat whiskers protruding from either side of the cat face, but it is the anatomical anomaly created by the juxtaposition of the whiskers on the nose expressed in Bandana's sculptures that is protected.  *Ty, Inc. v. GMA Accessories, Inc*., 132 F.3d 1167, 1170 (7th Cir.

disk cheeks; the cat face and ears creatively depicted by an edger blade and guide; the depiction of fur using edger guides; the terrier face comprised of four edger-guide pieces arranged around a long snout with curved tread-plate ears.[2] This list is comprised of original and unique elements created by the plaintiff. The creative use of particular tool components for certain features of animals is original and protectible, and the defendant may not appropriate the above-listed elements of the plaintiff's works.

### b. Intended Audience

The second step in the analysis requires the court to determine whether the defendant's works are substantially similar to the protectible elements of the plaintiff's creations from the viewpoint of the intended audience. As noted above, the intended audience for the products at issue is the lay observer. *See Kohus*, 328 F.2d at 858. Where the lay audience purchases the product at issue, and where the lay audience's untutored judgment determines whether the product will sell, the ordinary observer test is appropriate. *Id*.

The ordinary observer test focuses on the overall similarities rather than the minute differences between works. *See Novelty Textile Mills, Inc. v. Joan Fabric*

---

1997)(Anatomical anomalies created by the copyright owner and duplicated in the infringing works are evidence that the defendant did not independently create the animal depiction).

[2] This is not to say that there are not other elements of the subject Bandana works that are original and protectible that could be listed, but the court points out only those protectible elements necessary to the disposition of the present motion.

*Corp.*, 558 F.2d 1090, 1093 (2d Cir.1977) (copying need not be of every detail if the copy is substantially similar to the copyrighted work). Minor differences will not protect the defendants. *Concrete Machinery*, 843 F.2d at 604 (different sizes, lack of antlers, and direction of head orientation are trivial differences). Where there are overwhelming similarities among works, it is the similarity in the total concept and feel that a lengthy recitation of differences cannot change. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995). The substantial similarity evaluation must involve looking not only at the individual elements of the works in isolation, but also the overall look and feel of the work. *Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002). The court must ask whether an average lay observer would recognize the allegedly infringing work as having been appropriated from the copyrighted work. *See Folio Impressions, Inc., supra.*

### 3. Sculpture-by-sculpture comparison

**TJX Cat Potholder and Bandana Cat Potholder**

The cat faces on these two products are essentially identical. Each cat has two pointed ears with an edger-guide-like piece attached thereto depicting fur. One of the edger-guide points sticks up directly between the cats' ears. Two metal eyes are situated on the edger guide between the ears. A metal ball nose with three metal whiskers protrudes on either side directly underneath the eyes. The cats' cheeks are two punched-out convex metal disks. Every feature of the cats' faces is the same. TJX copied the specific expression of Bandana's idea.

8

Furthermore, the ordinary observer would find these cats' overall aesthetic appeal the same. *See, e.g., Peter Pan Fabrics, Inc., v. Martin Weiner Corp.*, 274 F.2d 487 (2d Cir. 1960); *Folio Impressions, Inc.*, *supra*. The fact that the defendant has appropriated every feature of Bandana's cat face leads the court to find that Bandana has a high likelihood of success on the merits as to its copyright claim.

**TJX Cat With Fish and Bandana Cat Potholder**

The same analysis applies in the comparison of these two products. While the cats' bodies are not substantially similar, the cats' faces are identical and Bandana has shown a high likelihood of success on the merits of this claim.

**TJX Dog Potholder and Bandana's Terrier, Scotty Schnauzer, and Golfer Dog**

The parties' dog sculptures present a harder case, as Bandana claims that the defendant appropriated protectible elements from three of its products to create its Dog Potholder. The TJX dog's ears are dissimilar to any of the three Bandana creatures' ears. The bent, rounded metal jowls of the TJX dog resemble the jowls of Bandana's Golfer Dog. The TJX dog and Golfer Dog have similar bodies, arms, and legs, but these features are not protectible. The TJX dog and Bandana's Scotty Schnauzer both use fractions of edger-guide-like pieces around the dogs' noses. When isolating each element of the dogs and comparing them, one sees many differences among them. Yet, the overall appearance of the TJX dog's face is quite similar to Bandana's Terrier's face. Both have similar metal eyes with a hole in the center perched at the top of a long metal snout. Behind the eyes of

both creatures is an edger-guide-like piece creating the appearance of furry eyebrows. It is this feature of the two dogs – the eyes perched on top of the nose in front of an edger-guide-like piece – that would allow an ordinary observer to look at the two dogs and surmise that one was appropriated from the other. Bandana has shown a substantial likelihood of success on the merits for this claim.

## II. Irreparable Injury

In copyright cases, a *prima facie* showing of infringement or a reasonable likelihood of success on the merits raises a presumption of irreparable harm. *See Forry, Inc. v. Neundorfer, Inc*., 837 F.2d 259, 267 (6th Cir. 1988). Bandana has demonstrated a strong likelihood of success on the merits on two of its claims. TJX was not able to rebut the presumption of irreparable injury. Accordingly, the court finds that Bandana will suffer irreparable injury.

## III. Harm to Others/Balance of the Equities

As the court finds that Bandana has demonstrated a strong likelihood of success on the merits and irreparable harm, the court finds that the harm to the defendants resulting from issuance of an injunction is outweighed by the harm Bandana would suffer if the injunction did not issue. The defendant's transformation of Bandana's creative and original product into a mass-market fad is the harm that would result from the flood of infringing products that would be released if the injunction did not issue.

## IV. Public Interest

The public interest is served by upholding copyright protection. The purpose of copyright law is to prevent the misappropriation of the products of creative and original thinking. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir. 1983). Therefore, the public interest is served by granting a preliminary injunction in relation to the sculptures that allegedly infringe on Bandana's products.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for a temporary restraining order (DE 3) is **GRANTED** and the defendants are ordered to cease and desist from copying, manufacturing, reproducing, importing, publishing, advertising, displaying, distributing, transmitting, selling, or otherwise placing on the market the animal sculptures Cat Potholder, Cat With Fish, and Dog Potholder.

Signed on May 19, 2005

*Jennifer B Coffman*

**Jennifer B. Coffman, Judge**
**United States District Court**

11